UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY OWENS,<br><br>            Plaintiff,<br><br>v.<br><br>STEPHANIE CLENDENIN, ET AL.,<br><br>            Defendants. | Case No. 1:23-cv-01056-EPG (PC)<br><br>SCREENING ORDER<br><br>ORDER ALLOWING PLAINTIFF'S COMPLAINT TO PROCEED ON HIS FOURTEENTH AMENDMENT CLAIMS FOR VIOLATIONS OF (1) THE RIGHT TO CURATIVE TREATMENT AND (2) THE RIGHT TO BE FREE FROM PUNISHMENT AGAINST DEFENDANTS CLENDENIN, PRICE, FULTON, VAN DE PUTTE, AND MAUL<br><br>(ECF No. 1) |

Plaintiff Johnny Owens is a civil detainee at Department of State Hospitals, Coalinga ("DSH- Coalinga"). He is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983 against Defendants who are employees at DSH-Coalinga.

Plaintiff filed the complaint commencing this action on July 14, 2023. (ECF No. 1). Plaintiff alleges that Defendants violated his Fourteenth Amendment right to have access to mental health treatment that gives him a realistic opportunity to be cured and released because they have not adequately staffed DSH-Coalinga with enough psychologists and because they are using non-licensed rehabilitation therapists and behavioral specialists in treatment plans.

1

(*Id.* at 3.)[1] Plaintiff also alleges that Defendants violated his Fourteenth Amendment right to be free from punishment by making Plaintiff's conditions of confinement more restrictive than those of inmates in county jails and prisons. (*Id.*) The complaint is now before this Court for screening.

The Court has reviewed Plaintiff's complaint, and for the reasons described below, the Court finds that Plaintiff's Fourteenth Amendment claims for violations of the right to curative treatment and to be free from punishment against Defendants Clendenin, Price, Fulton, Van De Putte, and Maul should proceed past screening.

As the Court has found that these claims should proceed past screening, the Court will, in due course, issue an order authorizing service of process on defendants Clendenin, Price, Fulton, Van De Putte, and Maul.

**I.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court may screen the complaint under 28 U.S.C. § 1915. That statute requires that the Court dismiss the case at any time if it determines that the action is either frivolous or malicious, or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

**II.     SUMMARY OF PLAINTIFF'S COMPLAINT**

Plaintiff alleges that he is "a civil detainee held pursuant to the Sexually Violent Predator Act (SVPA)" at DSH-Coalinga. (ECF No. 1 at 7.) He names as Defendants in this action Stephanie Clendenin, Director of the Department of State Hospitals; Brandon Price, Executive Director at DSH-Coalinga; Dr. Cory Fulton, Chief Psychologist at DSH-Coalinga;

---

[1] Page numbers refer to the blue CM/ECF numbers in the top right corner of the document.

Dr. Scott van de Putte, Senior Psychologist Supervisor at DSH-Coalinga; and Frank Maul, Chief of Rehab Therapy at DSH-Coalinga. (*Id.* at 8–9 ¶¶ 3–6). He sues Defendants in their official capacities. *Id.*

Plaintiff alleges that he is "civilly detained for treatment and rehabilitation." (*Id.* at 9 ¶ 7). The appropriate treatment is determined during the initial assessment upon admission. (*Id.* at 9–10 ¶ 11). The treatment is overseen by the treatment plan team, whose purpose is "to facilitate the Plaintiffs recovery and reintegration into the community." (*Id.* at 11 ¶ 17). The DSH-Coalinga offers sex offender treatment program (SOTP), which involves Plaintiff presenting to facilitators and peers in SOTP groups. (*Id.* at 11 ¶ 19; 12 ¶ 22). SOTP group facilitator is supposed to be "a clinician trained to do psychotherapy, or being supervised by someone licensed to do psychotherapy. . . . Practically speaking, this involves primarily psychologists and social workers." (*Id.* at 13–14 ¶¶ 28–29).

Plaintiff then alleges that Defendants violated his Fourteenth Amendment right to due process when they collectively, via acts and omissions, failed to properly staff DSH-Coalinga with enough psychologists to provide psychotherapy services, and failed to reduce the risk of violence and harm resulting from said practice. (*Id.* at 23 ¶ 68; *see also id.* at 3). Plaintiff also alleges that his Fourteenth Amendment rights were violated because Defendants properly staffed the treatment groups for "penal code offender," or criminal patients that had mental health disorders, but failed to do so for him. (*Id.* at 23–24 ¶¶ 68–69.) The criminal offender treatment groups, Plaintiff claims, were "consistent and uninterrupted." (*Id.* at 23–24 ¶ 69). He also contends that because of the different treatment he has been subjected to punishment because his condition of confinement is more restrictive than that of inmates in county jails and prisons. (*Id.* at 23 ¶ 68; *see also id.* at 3).

Plaintiff seeks injunctive relief related to requiring those treating him to have specific levels of education and state licenses. (ECF No. 1 at 25 ¶¶ 2–7; *see also id.* at 6). He also asks that Defendants properly staff DSH-Coalinga with enough therapists; refrain from placing non-licensed individuals and behavioral specialists in sex offender treatment groups, and ensure that

Plaintiff is offered SOTP treatment enrollment on a monthly, even he unenrolls. (*Id.* at 25 ¶ 4; 11 ¶ 17).

### III.  ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A.  42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

To state a claim under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a *person* acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). In most cases, "person" means the same thing under § 1983 as in ordinary use. A prison is not "a person" under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) ("'[P]erson" as used in § 1983 likewise does not include a State."); *Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969) ("[S]tate agencies which are but arms of the state government are not 'persons' for purposes of the Civil Rights Act.")

Neither a State, nor its officials acting in their official capacities are "persons" within the meaning of Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007). However, an exception to the rule that state officials who are sued in their official capacities are not "persons" for purposes of Section

1983 is when they are sued in those capacities for prospective injunctive relief. When this occurs, they are "persons" for purposes of the statute. *See Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (citations omitted); *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (citing *Doe*). "[A] suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity." *Doe*, 131 F.3d at 839.

Here, Plaintiff is suing Defendants, who are DSH-Coalinga state employees, in their official capacities, and he seeks only injunctive and prospective relief, not damages. (ECF No. 1 at 8–9 ¶¶ 3–6 (official capacity statements); *id.* at 25 ¶¶ 2–7, *id.* at 6 (requests for injunctive, prospective relief)). As a result, Eleventh Amendment immunity does not apply, and Plaintiff may proceed with any viable claims against Defendants in their official capacities. *See Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citations omitted) (stating Eleventh Amendment does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities).

### B. Fourteenth Amendment Due Process Claims

#### 1. Right to Access to Adequate Mental Health Treatment

Under the Due Process Clause of the Fourteenth Amendment, states are required to provide civilly committed individuals with access to mental health treatment that gives them a realistic opportunity to be cured and released. *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980)); *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing *Ohlinger*). "Because the purpose of confinement is not punitive, the state must also provide the civilly-committed with 'more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *Sharp*, 233 F.3d at 1172 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 233 (1982)). "Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) (brackets in original) (quoting *Ohlinger*, 652 F.2d at 779).

Plaintiff has raised a cognizable claim with respect to his claim that Defendants violated his Fourteenth Amendment right to have access to mental health treatment that gives him a

realistic opportunity to be cured and released. *See Ohlinger*, 652 F.2d at 778. Throughout the pleading, he alleges that DSH-Coalinga's program constitutes a substantial departure from the accepted professional standards and even its own standards, that Defendants have not adequately staffed DSH-Coalinga with enough psychologists, and that they are using non-licensed rehabilitation therapists and behavioral specialists in treatment plans.

Plaintiff contends that the Sex Offender Treatment Program at a facility like DSH-Coalinga must employ either a licensed psychologist or someone who is supervised by a licensed psychologist. (ECF No. 1 at 13–14 ¶¶ 28–29.) He further contends that Defendants' use behavioral therapists for certain programming is improper because: (1) a behavioral specialist "is not licensed to practice psychology," and (2) "most of the thirty-six behavioral specialists [at DSH-Coalinga] do not have any sex offender treatment background [nor] are [they] certified or otherwise credentialed in this area." (*Id.* at 14–15 ¶¶ 30–31) (brackets added).

Plaintiff argues further that Defendants' use of rehab therapists as primary SOTP group facilitators to provide psychotherapy services to him also violates both DSH-Coalinga's policy as well as state law which requires that primary facilitators be clinicians who are trained to do psychotherapy. (*Id.* 14–15 ¶¶ 29, 34.) Finally, Plaintiff references a report in which a state audit and evaluation body is alleged to have analyzed DSH's staffing methodology and found it to be "deficient in the delivering of mental health treatment" and "raised concerns about DSH's staffing." (*Id.* at 18, ¶ 49.) According to Plaintiff, the report "noted that DSH was providing far less group therapy than it should," and that "[c]are was widely inconsistent and did not include certain types of treatment, even when patients require such treatment." (*Id.*) (brackets added).

Plaintiff asserts that going through the four modules of the SOTP can take as much as seven years, if not more. (*Id.* at 12–13 ¶¶ 21, 25 (Plaintiff stating Module 1 "may last up to one quarter"; Module 2 "may last anywhere from three to five years, "and Module 3 "may last up to one or two years.")). "Defendants," Plaintiff argues, "have abdicated their responsibility to ensure the facility is properly staffed and that treatment team services are consistent and in compliance with state law." (*Id.* at 19 ¶ 52). As a result, he claims his enrollment in treatment

and in treatment teams has been unlawfully stalled and that his treatment plan has become outdated. (*Id.* at 19 ¶ 53).

Based on these allegations, Plaintiff has sufficiently alleged that because of Defendants' policies and practices with respect to providing staffing and treatment in the SOTP, his Fourteenth Amendment right to access to mental health treatment that gives him a realistic opportunity to be cured and released has been infringed upon. *See generally Oviatt By And Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (elements needed to establish violation of right by a government entity under Section 1983). Therefore, this claim may proceed past screening.

### 2. Right to Be Free from Punishment as a Civil Detainee

Individuals who are under civil commitment have a substantive due process right to be free from restrictions that amount to punishment. *See generally Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979) (stating detainee may not be punished prior to adjudication of guilt and imposed restrictions may not amount to punishment or violate Constitution). "To constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement.") *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004); *see Jones v. Blanas*, 393 F.3d 918, 93–34 (9th Cir. 2004) (stating restriction is punitive where it is intended to punish, is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that could be accomplished in alternative, less harsh methods). A restriction's punitive status may be inferred from the nature of the restriction. *Valdez v. Rosenbaum*, 303 F.3d 1039, 1045 (9th Cir. 2002).

Plaintiff has also raised a cognizable claim of a violation of his Fourteenth Amendment right to be free from punishment. With respect to this claim, he reiterates that Defendants have not adequately staffed DSH-Coalinga with enough psychologists to provide psychotherapy services, claiming that they have made his conditions of confinement more restrictive than those of inmates in county jails and prisons. (ECF No. 1 at 23 ¶ 68).

For example, Plaintiff references a "treatment needs report" he has obtained that confirms that even prior to the COVID-19 pandemic, Defendants were aware of and

1 participated in the reduction of clinical psychologists from two per unit to one per unit. This
2 policy, Plaintiff asserts, eliminated his monthly treatment conferences only to quarterly ones.
3 (*Id.* at 19 ¶ 51). He then states that Defendants' written policy permitted penal code offenders
4 with mental health disorders to be fully provided with the service, and that this was not what he
5 was offered. (*Id.*)

6       Treating criminal offenders who are, in part, being detained for punitive reasons better
7 than civil detainees who have not been convicted of a crime, effectively amounts to
8 punishment. *See Jones*, 393 F.3d at 932, 934 (stating conditions of confinement are
9 presumptively punitive if they are "identical to, similar to, or more restrictive than" those in
10 which criminal counterparts are held). Plaintiff has alleged that his access to a clinical
11 psychologist being reduced to half of what criminal offenders could access constitutes a
12 restriction which at best, could be accomplished by alternative, less harsh methods, and which
13 at worst, is excessive in relation any non-punitive purpose Defendants had for imposing the
14 policy. *See Jones*, 393 F.3d at 933–34.

15       For these reasons, Plaintiff has raised a cognizable claim that Defendants violated his
16 Fourteenth Amendment right as a civil detainee to be free from punishment. Therefore, this
17 claim may proceed past screening as well.

18     **IV.    CONCLUSION AND ORDER**

19       The Court has screened Plaintiff's complaint and finds that Plaintiff's Fourteenth
20 Amendment claims for violations of the right to curative treatment and to be free from
21 punishment against Defendants Clendenin, Price, Fulton, Van De Putte, and Maul should
22 proceed past screening.
23 \\\
24 \\\
25 \\\
26 \\\
27 \\\
28

As the Court has found that these claims should proceed past screening, the Court will, in due course, issue an order authorizing service of process on Defendants Clendenin, Price, Fulton, Van De Putte, and Maul.

IT IS SO ORDERED.

Dated:   **March 14, 2024**                              /s/ Erica P. Grosjean
                                                                UNITED STATES MAGISTRATE JUDGE