UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY OWENS,<br><br>            Plaintiff,<br><br>    v.<br><br>STEPHANIE CLENDENIN, *et al.*,<br><br>            Defendants. | Case No. 1:23-cv-01056-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' REQUEST FOR JUDICIAL NOTICE, AND TO DENY DEFENDANTS' MOTION TO DISMISS<br><br>(ECF Nos. 10, 13)<br><br>OBJECTIONS, IF ANY, DUE WITHIN 30 DAYS |

Plaintiff Johnny Owens is a pre-adjudication civil detainee at Department of State Hospitals, Coalinga (DSH-Coalinga). He is proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983 against Defendants who are employees at DSH-Coalinga. (ECF No. 4).

Plaintiff filed this case on July 14, 2023. (ECF No. 1). He alleges that Defendants violated his Fourteenth Amendment right to have access to mental health treatment that gives him a realistic opportunity to be cured and released because they have not adequately staffed DSH-Coalinga with enough psychologists and because they are using non-licensed rehabilitation therapists and behavioral specialists in treatment plans. (*Id.* at 3). Plaintiff also alleges that Defendants violated his Fourteenth Amendment right to be free from punishment by making his conditions of confinement more restrictive than those of criminal patients with

1

mental health disorders. (*Id.* at 23). The Court screened Plaintiff's complaint and found both of his claims cognizable. (ECF No. 7 at 8).

Defendants move to dismiss the complaint. (ECF No. 10 (motion to dismiss); ECF No. 12 (supplemental briefing)). Additionally, they request that the Court take judicial notice of certain state court documents concerning Plaintiff's detainment status. (ECF No. 13).

As explained below, the Court will recommend that Defendants' request for judicial notice (ECF No. 13) be GRANTED and Defendants' motion to dismiss (ECF No. 10) be DENIED.

## I.  PROCEDURAL HISTORY

### A.  Plaintiff's Complaint

Plaintiff's complaint alleges that he is "a civil detainee held pursuant to the Sexually Violent Predator Act (SVPA)" at DSH-Coalinga. (ECF No. 1, p. 7.) He names the following Defendants, all DSH-Coalinga employees: (1) Stephanie Clendenin, Director; (2) Brandon Price, Executive Director; (3) Dr. Cory Fulton, Chief Psychologist; (4) Dr. Scott van de Putte, Senior Psychologist; and (5) Frank Maul, Chief of Rehab Therapy. (*Id.* at 8-9).

He alleges that he "was forensically evaluated in state prison and determined to meet [SVPA] criteria." (*Id.* at 9). His "diagnoses are noted in [his] treatment plan," which DSH-Coalinga clinical staff uses "to assess what type of treatment groups to offer Plaintiff, that address both static and dynamic risk factors indicated as barriers to discharge." (*Id.*)

Plaintiff was further evaluated upon admission to DSH-Coalinga, which included "assessing Plaintiffs diagnosed mental disorder(s), assessing risk factors associated with his offense history, and assessing Plaintiffs cognitive functioning abilities." (*Id.* 9-10). Plaintiff was then "offered appropriate treatment indicated in his treatment plan, based on those abilities." (*Id.* at 10).

The treatment is overseen by the treatment plan team, whose purpose is "to facilitate [his] recovery and reintegration into the community." (*Id.* at 12). DSH-Coalinga offers the Sex Offender Treatment Program (SOTP), which involves, among other things, Plaintiff discussing "any existing mental health concerns such as if he is [] experiencing trauma, aggression,

depression, mood swings, stressors, or [that] he may process any deviant sexual or violent thoughts and fantasies, or discuss appropriate sexual thoughts and fantasies." (*Id.*). The SOTP primary facilitator is supposed to be "a clinician trained to do psychotherapy, or being supervised by someone licensed to do psychotherapy," which would mean for practical purposes "psychologists and social workers." (*Id.* at 13-14). And Plaintiff contends that "treatment interventions were delayed, interfered with, and only exacerbated the risks of insufficient mental health programming due to lack of staff." (*Id.* at 19).

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to due process "when they failed to properly staff the facility with enough psychologists to provide psychotherapy services, to include treatment team conferences and treatment groups and failed to reduce the risk of violence and harm because of this practice." (*Id.* at 23). Plaintiff also alleges that his Fourteenth Amendment rights were violated because Defendants properly staffed the treatment groups for "penal code [o]ffender[s]," or criminal patients that had mental health disorders, but failed to do so for him. (*Id.*) The criminal offender treatment groups, Plaintiff claims, were "consistent and uninterrupted." (*Id.*).

Plaintiff seeks injunctive relief, requiring those treating him to have certain levels of education and licensing. (*Id.* at 25). He also asks that Defendants properly staff DSH-Coalinga with enough therapists, refrain from placing non-licensed individuals and behavioral specialists in sex offender treatment groups, and ensure that he is offered SOTP treatment enrollment or re-enrollment on a monthly basis, even if he un-enrolls from the treatment. (*Id.*).

### B. Screening Order

The Court screened Plaintiff's Complaint on March 14, 2024, and issued an order concluding that "Plaintiff's Fourteenth Amendment claims for violations of the right to curative treatment and to be free from punishment against Defendants Clendenin, Price, Fulton, Van De Putte, and Maul should proceed past screening." (ECF No. 5, p. 8). In the screening order, the Court discussed caselaw, some of which is cited below, concluding civilly detained persons (1) have the right to access mental health treatment that gives them a realistic opportunity to be

cured and released; and (2) have a right to be free from restrictions amounting to punishment. (*Id.* at 5, 7).

### C. Defendants' Motion to Dismiss

On June 10, 2024, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), asking that the Court dismiss the complaint without leave to amend. (ECF No. 10).

Defendants' motion raises four main arguments: (1) Plaintiff, as a pre-adjudication civil detainee under the SVPA, does not have a statutory or constitutional right to treatment; (2) Plaintiff fails to state claims under the Eighth Amendment's deliberate indifference standards; (3) a court should not consider the type of mental health treatment other persons receive as a comparison between the type of treatment that Plaintiff is receiving, and (4) the Court should defer to Defendants' discretion in providing treatment to Plaintiff.

### D. Defendants' Supplemental Briefing and Request for Judicial Notice

On June 10, 2024, the Court issued an order, directing Defendants to address Plaintiff's detainment status—specifically, whether he was a pre-adjudication detainee under the SVPA awaiting trial or had found to be a sexually violent predator (SVP) after a trial. (ECF No. 11). The Court also directed Defendants to address whether their motion to dismiss—which appeared to rely on information outside the complaint—should be converted to a motion for summary judgment.

Defendants timely filed a supplement, stating that, although Plaintiff's complaint does not specify his status, "the judicially noticeable court records of Plaintiff's proceedings under the SVPA establish that, while Plaintiff is being detained following a finding that there is probable cause to believe he is a sexually violent predator (SVP), the trial to determine whether he is in fact an SVP has not yet occurred." (ECF No. 12 at 1-2). And because these documents are judicially noticeable, they argue that their motion to dismiss should not be converted to motion for summary judgment. (*Id.* at 3).

\\\
\\\

4

Along with their supplement, Defendants filed a request for judicial notice with three exhibits—all documents from the relevant state court record—with which Defendants seek to establish that Plaintiff is a pre-adjudication civil detainee. (ECF No. 13).

### E. Plaintiff's Opposition to Motion to Dismiss

Plaintiff opposes Defendants' motion to dismiss. (ECF No. 15). Plaintiff argues that (1) he has a statutory and constitutional right to treatment; (2) the Fourteenth Amendment applies to his claims; and (3) the Court should compare the treatment others receive in evaluating his care; and (4) the Court should not defer to the Defendants' discretion in providing treatment. Plaintiff asks the Court to deny Defendants' motion, or, alternatively, grant him leave to amend. Plaintiff attaches the SOTP Program Description as an exhibit to his response. (*Id.* at 10–30).

### F. Defendants' Reply

Defendants' reply generally reiterates their arguments from their motion to dismiss and responds to some arguments raised in Plaintiff's opposition. (ECF No. 16).

## II. DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

Before turning to the merits, the Court addresses Defendants' request to take judicial notice of three documents:

- Exhibit A, Orange County Superior Court Findings and Order filed November 21, 2021 in Case Number M-18875.
- Exhibit B, Orange County Superior Court Minute Order from April 12, 2024, in Case Number M-18875.
- Exhibit C, Orange County Superior Court docket, Case No. M-18875.

(ECF No. 13).

In their supplemental briefing, Defendants state that Exhibit A establishes that the state court found that there was probable cause to detain Plaintiff pursuant to SVPA until trial. (ECF No. 12, p. 2). Exhibits B establishes that a pretrial hearing was held on April 12, 2024, that Plaintiff appeared for that hearing via DSH-Coalinga, and that the next pretrial hearing was scheduled for August 9, 2024. (*Id.* at 2–3). Exhibit C, a copy of the docket in the underlying

1 SVP proceeding, establishes that SVP proceeding is an active matter, and the SVP trial has not
2 yet occurred. (*Id.* at 3). Defendants also argue that the Court may take judicial notice as
3 requested without converting their motion to dismiss to a motion for summary judgment. (ECF
4 No. 12, p. 3).

5  Plaintiff does not oppose the judicial notice request and does not contest the accuracy of
6 the submitted documents. Rather, in his opposition to the motion to dismiss, Plaintiff concedes
7 that he "has not been adjudicated as a SVP." (ECF No. 15, p. 3).

8  Under the Federal Rule of Evidence 201, "The court may judicially notice a fact that is
9 not subject to reasonable dispute because it . . . can be accurately and readily determined from
10 sources whose accuracy cannot reasonably be questioned." *Fed. R. Civ. P*. 201(b).

11  Here, Plaintiff does not dispute that he is a California Welfare and Institutions Code
12 § 6602 pre-adjudication civil detainee, and the accuracy of that fact may be determined from
13 the documents submitted by Defendants. Moreover, the fact at issue is relevant to the legal
14 standards that govern Plaintiff's claims.

15  The Court will thus recommend that Defendants' request for judicial notice be granted.
16 (ECF No. 13); *see Telucci v. Withrow*, No. 1:16-CV-00025-JLT PC, 2016 WL 2930629, at *3
17 (E.D. Cal. May 19, 2016) (taking judicial notice of state court record records that showed
18 probable cause hearings were held and plaintiff had been detained pursuant to SVPA); *see*
19 *Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879, 884 (9th Cir. 2022)
20 (noting that "matters properly subject to judicial notice" may be considered by a court in a
21 motion to dismiss).

22 **III.   DEFENDANTS' MOTION TO DISMISS**
23  **A.  Legal standards**
24  Federal Rule of Civil Procedure 12 permits a party to file a motion to dismiss a claim
25 for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule
26 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732
27 (9th Cir. 2001). Rule 8(a)(2) requires only "a short and plain statement of the claim showing
28 that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

### B. Analysis

#### 1. Defendants' Argument that the SVPA Does not Establish a Right to Treatment for Pre-Trial Detainees

Defendants' motion to dismiss first argues that Plaintiff's Fourteenth Amendment Claim for violation of the right to curative treatment should be dismissed because "the SVPA does not establish a constitutional right to treatment for pre-trial detainees."[1] (ECF No. 10, at p. 7). Defendants concede that "[u]nder the Due Process Clause of the Fourteenth Amendment, states are required to provide civilly committed individuals with access to mental health treatment that gives them a realistic opportunity to be cured and released," (ECF No. 10, p. 7), but go on to argue nonetheless that Plaintiff is not entitled to such treatment because he is detained as a pre-adjudication SVPA detainee, rather than a post-commitment SVPA detainee. Defendant relies on the language of the SVPA and argues that only individuals committed as SVPA detainees are entitled to treatment under that statute. Thus, Defendants argue "as a pretrial detainee, Owens has no automatic right to treatment under the SVPA." (ECF No. 10, p. 8).

\\\

---

[1] While Defendants use the term "pre-trial detainee" to refer to Plaintiff's status, the Court will use "pre-adjudication civil detainee" as that is the term the Ninth Circuit uses in *Jones*, which is discussed below. *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

In his opposition, Plaintiff concedes that the SVPA itself does not mandate treatment for him, but he argues that other provisions of California state law create a right for mental health treatment, and in any event, he has a constitutional right to treatment. (ECF No. 15, p. 4). He relies on the Fourteenth Amendment and the *Youngberg* professional judgment standard applicable to such claims. (*See, e.g.*, *id.* at 6).

Defendants' argument that "Owens has no automatic right to treatment under the SVPA," does not provide a basis to dismiss Plaintiff's claims in this case because none of Plaintiff's claims are based on the SVPA. Instead, Plaintiff's claims in the complaint are based on the Fourteenth Amendment. (ECF No. 5, p. 8 – screening order allowing "Plaintiff's Fourteenth Amendment claims for violations of the right to curative treatment and to be free from punishment against Defendants Clendenin, Price, Fulton, Van De Putte, and Maul [to] proceed past screening"). Thus, to the extent Defendants' motion to dismiss argues that the SVPA itself does not provide Plaintiff with a statutory right to treatment, that argument does not provide a basis to dismiss any pending claim in Plaintiff's complaint.

For the same reason, Defendants' citation to *People v. Ciancio* 109 Cal.App.4th 175, 181 (2003), *as modified on denial of reh'g* (June 27, 2003) is not on point. Defendants cite to *Ciancio* to argue that "there is no statutory provision mandating treatment before trial and designation as an SVP." *Id.* at 181, *cited* at ECF No. 10, at p. 8; *see also Ciancio*, 109 Cal.App.4th at 196 ("The parties have not brought to our attention any statute which *mandates* treatment for alleged SVP's prior to trial."). However, the Court in *Ciancio* did not analyze what if any treatment is required for pre-adjudication civil detainees, especially those detained after a probable cause determination pursuant to § 6602, under the Due Process clause.

In support of their argument, Defendants also cite to the California Supreme Court case of *Hubbart v. Superior Court*, 19 Cal.4th 1138, 1166 (1999), which held that the SVPA did not violate the constitutional guarantee of due process. In doing so, the California Supreme Court rejected the argument that the SVPA violated due process "unless it is coupled with a statutory guarantee of treatment providing a 'realistic opportunity to be cured.'" *Hubbart v. Superior Court,* 19 Cal.4th 1138, 1164 (1999) ("He complains that recovery is not guaranteed under the

1  Act, and that the statutory scheme reflects an implicit determination that the mental disorders
2  and dangerous behaviors of SVP's cannot be cured or controlled through treatment: and that
3  "'[a]menability to treatment' is not required for commitment under the Act"). It was in that
4  context that the California Supreme Court stated, in the quotation that Defendants include only
5  in part, "there is no broad constitutional right of treatment for persons involuntarily confined as
6  dangerous and mentally impaired, at least where 'no acceptable treatment exist[s]' or where
7  they cannot be 'successfully treated for their afflictions.'" *Id.* at 1166; *see also id.* at 1164 ("At
8  the outset, we reject Hubbart's suggestion that the Legislature cannot constitutionally provide
9  for the civil confinement of dangerous mentally impaired sexual predators unless the statutory
10 scheme guarantees and provides "effective" treatment.").

11 But nothing in *Hubbard* altered the constitutional standards, which Defendants
12 elsewhere cite, "[u]nder the Due Process Clause of the Fourteenth Amendment, states are
13 required to provide civilly committed individuals with access to mental health treatment that
14 gives them a realistic opportunity to be cured and released." *Ohlinger v. Watson*, 652 F.2d 775,
15 778 (9th Cir. 1980)); *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing *Ohlinger*).
16 Plaintiff's allegations in his complaint state a claim under this applicable legal standard.

### 2. Defendants' Argument that Plaintiff Fails to Allege the Elements of an Eighth Amendment Claim for Deliberate Indifference to Serious Medical Needs

Defendants' motion to dismiss next argues that Plaintiff fails to allege an objective serious medical need, deliberate indifference to that need, nor an injury from failing to obtain treatment, under the Eighth Amendment legal standards. (ECF No. 10, p. 8) ("None of these allegations, however, establish a medical need, much less a serious one, as required for an inadequate medical care cause of action."); (ECF No. 10, at p. 9) ("[A] claim for inadequate medical care must allege 'acts or omission sufficiently harmful to evidence deliberate indifference to serious medical needs'"). In support, Defendants cite to *Estelle v. Gamble*, 429 U.S. 97 (1976) and other cases applying the Eighth Amendment standard for deliberate indifference to serious medical needs.

However, the law is clear that the substantive due process protections under the Fourteenth Amendment, not the Eighth Amendment's deliberate indifference standards on which Defendants rely, provide the relevant framework for Plaintiff's claims. Notably, in *Jones v. Blanas*, which involved a pre-adjudication civil detainee under the SVPA, the Ninth Circuit concluded that, "to prevail on a Fourteenth Amendment claim regarding conditions of confinement, the confined individual need not prove 'deliberate indifference' [under the Eighth Amendment] on the part of government officials." *Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004); *Frank v. Fresno Cnty.*, No. 1:12-CV-01026-AWI, 2015 WL 1201284, at *3 (E.D. Cal. Mar. 16, 2015) ("Like pretrial criminal detainees, pre-commitment civil detainees may avail themselves of the more protective fourteenth amendment standard, rather than the Eighth Amendment, when challenging their conditions of confinement.") (internal citation and quotation marks omitted).

The Ninth Circuit has likewise relied on the Fourteenth Amendment in cases involving persons detained with mental health problems. Specifically, it has noted that rehabilitative treatment "is constitutionally required" as "the State may not justify [a person's] extended sentence on the basis of mental illness without affording appropriate treatment." *Ohlinger*, 652 F.2d at 777. Importantly, "[a]dequate and effective treatment is constitutionally required because, absent treatment, [persons] could be held indefinitely as a result of their mental illness." *Id.* at 778; *see Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) ("We have held that civilly committed persons must be provided with mental health treatment that gives them a realistic opportunity to be cured or improve the mental condition for which they were confined.") (internal citations and quotation marks omitted) (discussing mentally ill defendants awaiting trial); *see Bodnar v. Clendenin*, No. 2:22-CV-1533 AC P, 2023 WL 3077653, at *3 (E.D. Cal. Apr. 25, 2023) (applying Fourteenth Amendment in case where SVPA detainee challenged his lack of proper mental health treatment).

\\\
\\\
\\\

Accordingly, Defendants' arguments based on deliberate indifference under the Eighth Amendment do not provide a basis to dismiss Plaintiff's claims.[2]

As for the proper standard that guides Plaintiff's Fourteenth Amendment claims, the *Youngberg* professional judgment standard applies. *Youngberg v. Romeo*, 457 U.S. 307, 321-23 (1982). In its decision in *Ammons v. Washington Dep't of Soc. & Health Servs.*, the Ninth Circuit addressed *Youngberg* as follows:

> In *Youngberg v. Romeo*, 457 U.S. 307, 310, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court was confronted with an involuntarily committed mental patient in a state hospital who alleged that, while at the hospital, he had been injured on numerous occasions "by his own violence and by the reactions of other residents to him." . . .
>
> According to *Youngberg*, the Constitution requires that hospital officials, in order to protect a patient's right to safe conditions, exercise professional judgment. *Id.* at 321–22, 102 S.Ct. 2452. The Court explained that liability may be imposed for failure to provide safe conditions "when the decision made by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323, 102 S.Ct. 2452. *Youngberg*, then, created a standard whereby whether a hospital administrator has violated a patient's constitutional rights is determined by whether the administrator's conduct diverges from that of a reasonable professional. We refer to this as the "*Youngberg* professional judgment standard." In distinguishing this standard from the "deliberate indifference" standard used in Eighth Amendment cruel and

---

[2] While Defendants primarily cite to the Eighth Amendment in their brief, the Court acknowledges that they describe it as a "floor" for Plaintiff's legal rights, and they elsewhere acknowledge that the Fourteenth Amendment is the source of his claims. (ECF No. 10, pp. 8, 11). Thus, it is worth noting that Plaintiff would likely satisfy the objective serious medical need standards. According to the probable cause order, subject to the Court's judicial notice, Plaintiff has a "diagnosed mental disorder . . . that makes him a danger to the health and safety of others." (ECF No. 13, p. 5); *see Hubbart v. Superior Ct.*, 19 Cal. 4th 1138, 1166 (1999) ("The Act is based on the premise that SVP's suffer from clinically diagnosable mental disorders which require psychiatric care and treatment . . ."). Similarly, Plaintiff cannot be released from civil commitment until he has been successfully treated or otherwise found not to be a danger. "The SVPA is also designed to ensure that the committed person does not 'remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness.'" *Hubbart*, 19 Cal. 4th at 1177 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 364 (1997); Cal. Welf. & Inst. Code § 6605(c). Accordingly, the denial of treatment potentially prolongs Plaintiff's involuntary confinement.

11

> unusual punishment cases, the *Youngberg* Court noted that "[p]ersons who have been involuntarily committed are entitled to *more considerate treatment and conditions of confinement* than criminals whose conditions of confinement are designed to punish." *Id.* at 321–22, 102 S.Ct. 2452 (emphasis added). The Court approvingly cited the *Youngberg* professional judgment standard in *County of Sacramento v. Lewis*, 523 U.S. 833, 852 n. 12, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), noting that "[t]he combination of a patient's involuntary commitment and his total dependence on his custodians obliges the government to take thought and make reasonable provision for the patient's welfare."
>
> Relying upon *Youngberg*, the Ninth Circuit has repeatedly recognized the Fourteenth Amendment right of involuntarily committed patients to safe confinement conditions.

648 F.3d 1020, 1027–28 (9th Cir. 2011) (footnotes omitted).

Here, Plaintiff's complaint alleges that Defendants' conduct diverges from that of a reasonable professional. Among other things, he alleges that healthcare providers lack licensure and educational requirements and that treatment has been delayed. (ECF No. 1, pp. 15, 19). While Defendants attempt to portray Plaintiff's complaint as being full of bare assertions, he provides specific facts and allegations that must be taken as true at this stage of the proceedings. (*See, e.g.*, ECF No. 10, pp. 10-11). For example, he states that "most of the thirty-six Behavioral Specialist do not have any sex offender treatment background or are certified or otherwise credentialed in this area" and his monthly treatment team conferences were reduced from monthly conferences to quarterly while criminal patients were provided with monthly services. (ECF No. 1, pp. 15, 19).

Thus, while the Court does not decide the level of care that must be provided, or whether such care must be the same as persons civilly committed under the SVPA, Plaintiff's allegations are sufficient to state a claim under the *Youngberg* standard. *See Ray Robertson v. Contra Costa Cnty.*, No. 15-CV-02549-WHO, 2016 WL 4259135, at *5 (N.D. Cal. Aug. 12, 2016) ("County Defendants may ultimately be able to establish, as a matter of law, that the decisions regarding Robertson's mental health care were within the scope of 'professionally

acceptable choices.' *Youngberg*, 457 U.S. at 323. But they will have to do so after the parties have had more of an opportunity to develop the factual record.").

### 3. Defendants' Argument that Comparison with Treatment Given to Sentenced Criminals are not Relevant to Fourteenth Amendment Claim

Defendants' motion to dismiss next argues that "the medical care that patients committed to DSH under Non-SVP related statutes receive is irrelevant to Owens' Claim." (ECF No. 10, p. 11).

As an initial matter, Defendants' argument appears to address the relevance of certain evidence, rather than whether Plaintiff's allegations in his complaint state a claim. It thus does not provide an independent basis to dismiss the claims in Plaintiff's complaint. Moreover, to the extent Defendants use this argument to claim that "Owen has failed to establish any of the requirements of a viable claim for inadequate medical care," under the deliberate indifference standard, the Court has addressed the argument above.

Nevertheless, it is worth noting that the Ninth Circuit has held that comparison with persons detained as part of the criminal process is relevant to a Fourteenth Amendment claim. For example, in *Jones*, the Ninth Circuit addressed the relevant Fourteenth Amendment protections regarding pre-adjudication civil detainees under the SVPA as follows:

> The case of the individual confined awaiting civil commitment proceedings implicates the intersection between two distinct Fourteenth Amendment imperatives. First, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321–22, 102 S.Ct. 2452. Second, when the state detains an individual on a criminal charge, that person, unlike a criminal convict, "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535, 99 S.Ct. 1861 (emphasis added); *see also Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir.2004) ("[T]he Fourteenth Amendment prohibits all punishment of pretrial detainees."). As civil detainees retain greater liberty protections than individuals detained under criminal process, *see Youngberg*, 457 U.S. at 321–24, 102 S.Ct. 2452, and pre-adjudication detainees retain greater liberty protections than convicted ones, *see Bell*, 441 U.S. at 535–36, 99 S.Ct. 1861, it stands to reason that an individual detained awaiting civil commitment proceedings is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime.

393 F.3d at 931-32; *see also id.* at 932 ("In addition to comparing the conditions of confinement of pre-adjudication *civil* detainees to those of pre-trial *criminal* detainees, it is also relevant to compare confinement conditions of civil detainees *pre-adjudication* to conditions *post-commitment*."). Similarly, in *King v. Cnty. of Los Angeles*, 885 F.3d 548, 552 (9th Cir. 2018), the Ninth Circuit considered an SVPA pre-adjudication detainee who was detained for almost eight years in the Los Angeles County jail. In reversing, in part, the grant of summary judgment for Defendants, the Ninth Circuit compared the conditions of the pre-adjudication SVPA to the criminal detainees. *Id.* at 553-54 ("Detainees in the SVP unit were housed separately from the jail's criminal population, but were subject to essentially the same regime. Except during the holidays, SVP detainees were locked in their cells at night. SVP detainees were not allowed to make or receive direct telephone calls. . . . ."As a courtesy," SVP detainees received a few "privileges" that were not available to the criminal detainee population."). The Ninth Circuit also compared those conditions to those of post-adjudication SVPA detainees. *Id.* at 555-56 ("Conditions at Coalinga differ significantly from those at [the jail]. SVPs at Coalinga are treated as 'patients' by a staff that includes 'psychologists, psychiatrists, social workers, rehabilitation therapists, registered nurses, psychiatric technicians, and other medical and clinical staff.'").

Put simply, a comparison between the mental health treatment that Plaintiff receives and others receive is relevant as to whether Plaintiff's treatment departs from the *Youngberg* professional judgment standard. *See Donaghe v. Lashway*, No. 316CV05973RJBJRC, 2017 WL 4675645, at *3 (W.D. Wash. Oct. 18, 2017) ("Regarding the deficient health treatment, the Amended Complaint identifies a significant disparity between Plaintiff's mental health treatment as a civil detainee and that received by criminal counterparts, which, if true, could plausibly constitute a substantial departure from accepted professional judgment."). And as noted above, Plaintiff alleges that certain mental health patients have more favorable treatment options than he does. (ECF No. 1, p. 19).

\\\

\\\

Thus, the Court concludes that Defendants' argument that comparisons with other types of detainees are not relevant to Plaintiff's claim is inaccurate and does not form a basis to dismiss Plaintiff's complaint.

### 4. Defendants' Argument that the Court Should Defer to the State's Discretion in Establishing and Administering the SOTP

Lastly, the Court addresses Defendants' argument that "[t]he [c]omplaint should . . . be dismissed because it would be improper for courts to intervene in DSH-C's administration of the SOTP," arguing that Defendants enjoy wide broad discretion to determine Plaintiff's mental health treatment. (ECF No. 10, p. 13).

The Court recognizes that, "[i]n order to minimize the interference by the federal judiciary with the internal operations of state institutions, courts should show deference to the judgment exercised by a qualified professional." *Sharp*, 233 at 1171. However, the Court also cannot accept arguments that "would transfer the safeguarding of constitutional rights from the courts to mental health professionals. Conditions of confinement would be above judicial scrutiny and would depend on who happened to be in charge of a particular program." *Id.* Rather, "the courts may take action when there is a substantial departure from accepted professional judgment or when there has been no exercise of professional judgment at all." *Id.*

As alleged in the complaint, such is the case here, as Plaintiff is arguing that Defendants have failed to comply with the *Youngberg* professional judgment standard. Because the Court must look beyond "assertions of compliance," it will not recommend dismissing Plaintiff's complaint based on deference to Defendants' discretion at this stage of the proceedings. *Id.* at 1172.

### IV. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, **IT IS RECOMMENDED** as follows:

1. Defendants' Request for Judicial Notice (ECF No. 13) be GRANTED.
2. Defendants' Motion to Dismiss (ECF No. 10) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty

days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than 15 pages including exhibits.

Any response to the objections shall be served and filed within thirty days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 16, 2025**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE